**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**LAKE CHARLES DIVISION**

| | | |
|---|---|---|
| **OUR PLACE CONDOMINIUMS, INC.** | : | **CIVIL ACTION NO.** |
| | : | |
| **VERSUS** | : | **JUDGE** |
| | : | |
| **STATE FARM FIRE AND CASUALTY COMPANY** | : | **MAGISTRATE JUDGE** |
| | : | |

**COMPLAINT FOR DAMAGES**

**NOW INTO COURT,** through undersigned counsel, comes Plaintiff, Our Place Condominiums, Inc., which respectfully submits this Complaint for Damages against Defendant, State Farm Fire and Casualty Company, and further respectfully avers as follows:

**PARTIES**

1.

Plaintiff, Our Place Condominium, Inc. ("Plaintiff"), is a non-profit corporation organized and existing under the laws of the State of Louisiana, which has its domicile and principal place of business in Calcasieu Parish, State of Louisiana.

2.

Made Defendant herein is State Farm Fire and Casualty Company ("Defendant"), a foreign insurance corporation which is organized and existing under the laws of the State of Illinois and which has its principal place of business in McClain County, State of Illinois, which may be served through its registered agent for service of process, the Louisiana Secretary of State, located at 8585 Archives Avenue, Baton Rouge, Louisiana, 70809.

## VENUE AND JURISDICTION

3.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because complete diversity of citizenship exists between the Plaintiff, a citizen of the State of Louisiana, and Defendant, a citizen of the State of Illinois. Plaintiff is a non-profit corporation organized and existing under the laws of the State of Louisiana with its domicile and principal place of business in Calcasieu Parish, Louisiana, and is therefore a citizen of the State of Louisiana. Defendant is an insurance company organized in and under the laws of the State of Illinois and has its principal place of business in the Bloomington, Illinois, and is therefore a citizen of the State of Illinois. Further, the amount in controversy is greater than $75,000.00, exclusive of interest and costs. The Court has personal jurisdiction over Defendant because it has done and is doing business in the State of Louisiana and within this federal judicial district.

4.

Venue is proper in this Honorable Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District; and the Premise that is subject to the instant dispute is located in this District.

## FACTUAL BACKGROUND

5.

At all times relevant hereto, and through the present date, Plaintiff owned and owns the fifteen-building apartment complex located at 1020 West McNeese Street, Lake Charles, Louisiana 70605 (hereinafter referred to as "Insured Premise").

6.

At all times relevant hereto, and specifically between May 25, 2020 and May 25, 2021, Defendant provided Plaintiff a policy of insurance, bearing policy number 98-25-9198-0 (hereafter the "First SF Policy") which covered the Insured Premise against loss and damage caused by, among other perils, fire, wind, hail, and water. The First SF Policy was in full force and effect at the time of three of the five covered loss events that are the subject of the instant lawsuit.

7.

At all times relevant hereto, and specifically between May 25, 2021 and May 25, 2022, Defendant provided Plaintiff a policy of insurance, bearing policy number 98-25-9198-0 (hereafter the "Second SF Policy") which covered the Insured Premise against loss and damage caused by, among other perils, fire, wind, hail, and water. The Policy was in full force and effect at the time of two of the five covered loss events that are the subject of the instant lawsuit.

**Losses Under the First SF Policy**

8.

On the evening of August 26, 2020, and into the early morning hours of August 27, 2020, while the First SF Policy was in full force and effect, Hurricane Laura made landfall near Cameron, Louisiana, as a Category 4 hurricane with sustained winds of 150 miles per hour. After making landfall, Hurricane Laura traveled north and directly through Calcasieu Parish, Louisiana, with sustained winds of nearly 100 miles per hour and gusts over 130 miles per hour. The Insured Premise sustained significant damages caused by Hurricane Laura.

9.

Only weeks later, on October 9, 2020, while the First SF Policy was in full force and effect, the Insured Premise sustained additional damage because of Hurricane Delta, a Category Two hurricane, with winds of up to 100 mph.

10.

Devastating winds, and wind-driven rain caused unimaginable damage as both hurricanes passed through Southwest Louisiana.

11.

Hurricanes Laura and Delta resulted in extensive damage and destruction throughout the Lake Charles and Southwest Louisiana areas, including destroying the power grid and devastating damage to thousands of structures.

12.

On and after February 11, 2021, while the First SF Policy was in full force and effect, a severe ice storm and freeze event occurred in Southwestern Louisiana. A system of heavy rains, wintry precipitation, and freezing temperatures began moving across Louisiana on February 11, 2021, and a second, similar system, followed on February 17, 2021. The impacts of the wintry precipitation and low temperatures, some of the lowest ever recorded in the region, posed a serious threat to the lives and property of the people of Louisiana. There were major power outages and outages to water systems, impacting roughly one-quarter of the Louisiana population.

13.

The February 2021 severe freeze/ice storm event caused additional damages to the Insured Premise.

14.

Hurricanes Laura and Delta, and the freeze/ice storm event, caused substantial amounts of damage to the Insured Premise, including damages to the roofs of the buildings comprising the Insured Premise; damages to the exteriors and interiors of the building; water infiltration; and other damages as will be shown at the trial of this matter.

15.

In compliance with the First SF Policy, Plaintiff timely provided notice of the aforementioned loss events of Hurricane Laura, Hurricane Delta, and the freeze/ice storm event, to Defendant and took reasonable steps to mitigate the damage caused by the three loss events as soon as reasonably possible.

16.

Upon notification of the three loss events, Defendant performed an inspection(s) of the loss and damage to the Insured Premise caused by Hurricane Laura, Hurricane Delta, and the freeze/ice storm event. Thereafter, Defendant provided one or more loss estimates on the claims.

17.

Plaintiff, in compliance with the terms of the First SF Policy, cooperated with Defendant and its consultants and made the Insured Premise available for inspection at all times. Defendant, directly and/or through its loss consultants and adjusters, had ample opportunity to investigate and inspect the damage to the Insured Premise caused by Hurricanes Laura and Delta, and the freeze/ice storm event.

18.

The payments made by Defendant to date are inadequate to cover the cost of repairs caused by Hurricanes Laura and Delta, and the freeze/ice storm event.

19.

As a result of Defendant's delays and failure to pay the amounts due under the First SF Policy, Plaintiff has had to retain undersigned counsel to bring the claims to a conclusion and final resolution.

20.

Defendant failed to pay the amount due to Plaintiff in connection with the subject claims arising from Hurricanes Laura and Delta, and the freeze/ice storm event, within thirty (30) days after receipt of satisfactory proof of loss, and also failed to make a written offer to settle Plaintiff's property damage claims within thirty (30) days after receipt of satisfactory proof of loss of the claims.

21.

Defendant has been in possession of sufficient documentation to fully apprise itself of the actual loss and damage to the Property as a result of Hurricane Laura and Hurricane Delta, and the freeze/ice storm event. Defendant failed to pay Plaintiff the actual amount of the loss due under the First SF Policy despite having satisfactory proof of loss for more than sixty (60) days.

22.

Defendant breached its affirmative duties under LSA-R.S. § 22:1973 as a result of its failure to timely and reasonably adjust the subject losses caused by Hurricanes Laura and Delta, and the freeze/ice storm event.

23.

Despite Defendant's ongoing breaches and failure to timely pay the loss amounts due under the First SF Policy, Plaintiff has continued to work with Defendant and its consultants to ensure compliance with Plaintiff's duties under the First SF Policy.

24.

Defendant's failure to timely pay benefits owed under the First SF Policy has placed the Insured Premise at risk.

25.

Defendant has unjustifiably failed and/or refused to perform its obligations under the First SF Policy and has wrongfully or unfairly limited payment on Plaintiff's claims.

26.

As a result of the damage to the Insured Premise caused by Hurricanes Laura and Delta, and the freeze/ice storm event, Plaintiff has sustained significant losses and has incurred additional extra expenses.

27.

Because of Defendant's failure to timely compensate Plaintiff for losses that are clearly covered and owed under the First SF Policy, Plaintiff has and will continue to sustain and/or incur additional losses and extra expenses, including increased costs of construction.

28.

As a result of Defendant's bad faith conduct in connection with its adjustment of these claims, Plaintiff has incurred professional expenses, including expert and/or attorney's fees, to

determine that Defendant wrongfully failed to timely pay adequate amounts owed under the First SF Policy in connection with Plaintiff's claims.

29.

Defendant's acts and omissions in failing to pay Plaintiff the actual amounts owed under the First SF Policy within sixty (60) days of receiving satisfactory proof of loss is arbitrary, capricious, or without probable cause, and Defendant is in breach of its affirmative duties of good faith and fair dealing.

30.

As a result of Defendant's failure and delays to timely adjust and pay the loss amounts due under the First SF Policy in response to the damage caused by Hurricanes Laura and Delta, and the freeze/ice storm event, Plaintiff has and/or will continue to sustain additional loss and damage and will continue to incur additional costs and expense at increased prices in connection with its completion of the repairs.

**Losses Under the Second SF Policy**

31.

On June 25, 2021, while the Second SF Policy was in full force and effect, a fire occurred at one of the building units comprising the Insured Premise.

32.

On November 18, 2021, while the Second SF Policy was in full force and effect, another fire occurred at one of the building units comprising the Insured Premise.

33.

In compliance with the Second SF Policy, Plaintiff timely provided notice of the aforementioned loss events of the two fires to Defendant and took reasonable steps to mitigate the damage caused by the two loss events as soon as reasonably possible.

34.

Upon notification of the loss events, Defendant performed an inspection(s) of the loss and damage to the Insured Premise caused by the two fires. Thereafter, Defendant provided one or more loss estimates on the claims.

35.

Plaintiff, in compliance with the terms of the Second SF Policy, cooperated with Defendant and its consultants and made the Insured Premise available for inspection at all times. Defendant, directly and/or through its loss consultants and adjusters, had ample opportunity to investigate and inspect the damage to the Insured Premise caused by the two fires.

36.

The payments made by Defendant to date are inadequate to cover the cost of repairs caused by the two fires

37.

As a result of Defendant's delays and failure to pay the amounts due under the Second SF Policy, Plaintiff has had to retain undersigned counsel to bring the claims to a conclusion and final resolution.

38.

Defendant failed to pay the amount due to Plaintiff in connection with the subject claims arising from the two fires within thirty (30) days after receipt of satisfactory proof of loss, and also failed to make a written offer to settle Plaintiff's property damage claims within thirty (30) days after receipt of satisfactory proof of loss of the claims.

39.

Defendant has been in possession of sufficient documentation to fully apprise itself of the actual loss and damage to the Property as a result of the two fires. Defendant failed to pay Plaintiff the actual amount of the loss due under the Second SF Policy despite having satisfactory proof of loss for more than sixty (60) days.

40.

Defendant breached its affirmative duties under LSA-R.S. § 22:1973 as a result of its failure to timely and reasonably adjust the subject losses caused by the two fires.

41.

Despite Defendant's ongoing breaches and failure to timely pay the loss amounts due under the Second SF Policy, Plaintiff has continued to work with Defendant and its consultants to ensure compliance with Plaintiff's duties under the Second SF Policy.

42.

Defendant's failure to timely pay benefits owed under the Second SF Policy has placed the Insured Premise at risk.

43.

Defendant has unjustifiably failed and/or refused to perform its obligations under the Second SF Policy and has wrongfully or unfairly limited payment on Plaintiff's claims.

44.

As a result of the damage to the Insured Premise caused by the two fires, Plaintiff has sustained significant losses and has incurred additional extra expenses.

45.

Because of Defendant's failure to timely compensate Plaintiff for losses that are clearly covered and owed under the Second SF Policy, Plaintiff has and will continue to sustain and/or incur additional losses and extra expenses, including increased costs of construction.

46.

As a result of Defendant's bad faith conduct in connection with its adjustment of these claims, Plaintiff has incurred professional expenses, including expert and/or attorney's fees, to determine that Defendant wrongfully failed to timely pay adequate amounts owed under the Second SF Policy in connection with Plaintiff's claims.

47.

Defendant's acts and omissions in failing to pay Plaintiff the actual amounts owed under the Second SF Policy within sixty (60) days of receiving satisfactory proof of loss is arbitrary, capricious, or without probable cause, and Defendant is in breach of its affirmative duties of good faith and fair dealing.

48.

As a result of Defendant's failure and delays to timely adjust and pay the loss amounts due under the Second SF Policy in response to the damage caused by the two fires, Plaintiff has and/or will continue to sustain additional loss and damage and will continue to incur additional costs and expense at increased prices in connection with its completion of the repairs.

## CAUSES OF ACTION

### A. Breach of Insurance Contract

49.

Plaintiff realleges and re-avers the allegations contained in the preceding paragraphs above, as if restated herein.

50.

The First SF Policy is an insurance contract between Plaintiff and Defendant that provides coverage for the losses resulting from Hurricanes Laura and Delta, and the freeze/ice storm event.

51.

The Second SF Policy is an insurance contract between Plaintiff and Defendant that provides coverage for the losses resulting from the two fires.

52.

Despite having adequate proof of loss, Defendant failed to timely tender adequate funds that are owed to Plaintiff under the First SF Policy and the Second SF Policy.

53.

Upon information and belief, Defendant has breached the insurance contracts by, among other things:

(i) purposely and/or negligently failing to timely tender undisputed insurance proceeds;

(ii) conducting the investigation and claims handling in bad faith; and

(iii) failing to adequately compensate Plaintiff for the damages to the Insured Premise, as required by the Policy.

54.

Plaintiff has suffered and will continue to suffer damages as a result of Defendant's breaches of the insurance contracts.

**B. Bad Faith Damages for Violations of LSA-R.S. § 22:1892 and § 22:1973.**

55.

Plaintiff realleges and re-avers the allegations contained in the preceding paragraphs, above, as if restated herein.

56.

Pursuant to La. R.S. § 22:1892, Defendant was required to unconditionally tender payment to Plaintiff for reasonably undisputed losses caused by Hurricane Laura, Hurricane Delta, the freeze/ice storm event, the June 25, 2021 fire, and the November 18, 2021 fire within thirty (30) days of Defendant's receipt of satisfactory proof of loss when its adjuster(s) inspected the Insured Premise. Defendant failed to do so.

57.

La. R.S. § 22:1892 further required Defendant to re-evaluate Plaintiff's claims and to tender additional unconditional payments to Plaintiff each time Defendant received additional information concerning the losses sustained by Plaintiff. Defendant failed to do so.

58.

Defendant's failure to pay adequate amounts timely in this matter was arbitrary, capricious, or without probable cause.

59.

Pursuant to La. R.S. § 22:1892, Defendant is liable to Plaintiff for a penalty equal to fifty percent (50%), in addition to the amount of the loss, of the amount due from Defendant, as well as reasonable attorney's fees and costs, for Defendant's failure to unconditionally tender the amounts owed to Plaintiff within thirty (30) days after receipt of satisfactory proof of loss.

60.

Pursuant to La. R.S. § 22:1973, Defendant is additionally liable to Plaintiff for actual damages, for Defendant's misrepresentations of pertinent facts concerning the amounts owed, coverages, and provisions under the First SF Policy and the Second SF Policy, as well as for failing to unconditionally tender the amounts owed to Plaintiff within sixty (60) days after receipt of satisfactory proof of loss and because that failure was arbitrary, capricious or without probable cause.

61.

Pursuant to La. R.S. § 22:1973, in addition to actual damages for its breaches of the statute, Defendant is also liable to Plaintiff for a penalty of the up to two times the actual damages Plaintiff sustained or five thousand dollars, whichever is greater.

## DAMAGES

62.

As a result of the actions of Defendant, Plaintiff has suffered the following nonexclusive list of past, present, and future damages, in amounts reasonable in the premises:

a. Damage to the dwelling and other structures located at the Insured Premise;

b. Mitigation, remediation and repair costs;

c. Diminution in value;

d. Lost and/or damaged personal property;

e. Loss and damage due to delays and/or inability to make appropriate repairs as a result of inadequate insurance payments;

f. Any and all other applicable damages covered under any of the applicable coverages afforded under the Policies' sub-coverage limits, including but not limited to demolition, debris removal, and increased cost of construction;

g. Any and all other consequential damages caused by Defendant's breaches;

h. Penalties as allowed by statute;

i. Attorney's fees and costs of these proceedings, and all other costs incurred prior to this litigation as a result of Defendant's breaches; and

j. Any and all other damages that are shown through discovery and/or proven at the trial of this matter.

**JURY DEMAND**

63.

Plaintiff demands trial by jury.

**REQUEST FOR RELIEF**

64.

**WHEREFORE**, Plaintiff, Our Place Condominiums, Inc., prays that, after due proceedings, including trial by jury, there be a judgment rendered herein in Plaintiff's favor and against Defendant, State Farm Fire and Casualty Company, for the full amounts due under the terms of the coverages provided by the First SF Policy and the Second SF Policy, for actual

damages, penalties, attorney's fees, costs, and expenses, and for such other damages as would reasonably and justly compensate Plaintiff in accordance with the rules of law, plus interest to the fullest extent allowed by law, all court costs, and for any and all other general and equitable relief that may be appropriate.

**Respectfully submitted,**

**ROBICHAUX, MIZE, WADSACK, RICHARDSON & WATSON, LLC**

**Date:** August 26, 2022 **BY:** /s/ Matthew M. Mize
**MATTHEW M. MIZE**, Bar No. 33993
**TRISTAN G. GRUSPIER**, Bar No. 39900
1777 Ryan Street (70601)
P. O. Box 2065
Lake Charles, LA 70602
Telephone: (337) 433-0234
Fax: (337) 433-8595
Email: mmm@rmwlegal.com
tgg@rmwlegal.com

-and-

**PANDIT LAW FIRM, LLC**

**RAJAN PANDIT**, Bar No. 32215
**JOHN MARK FEZIO**, Bar No. 29861
**PETER N. FREIBERG**, Bar No. 22912
701 Poydras Street, Suite 3950
New Orleans, LA 70139
Telephone: (504) 313-3800
Facsimile: (504) 313-3820
Email: rpandit@panditlaw.com
jfezio@panditlaw.com
pfreiberg@panditlaw.com

-and-

**TAYLOR, PORTER, BROOKS & PHILLIPS, L.L.P.**

**MATTHEW B. PETTAWAY**, Bar No. 33313
145 East Street
Lake Charles, LA 70601
Telephone: (337) 436-7787
Email: matt.pettaway@taylorporter.com

***Counsel for Plaintiff***

**PLEASE SERVE:**
State Farm Fire and Casualty Company
Through its agent for Service of Process
Louisiana Secretary of State
8585 Archives Avenue
Baton Rouge, Louisiana 70809