UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**OUR PLACE CONDOMINIUMS INC**     **CASE NO. 2:22-CV-05121**

**VERSUS**     **JUDGE JAMES D. CAIN, JR.**

**STATE FARM FIRE & CASUALTY CO**     **MAGISTRATE JUDGE LEBLANC**

## MEMORANDUM RULING

Before the court is a Motion for Partial Summary Judgment [doc. 48] filed by plaintiff Our Place Condominiums Inc. Defendant State Farm Fire & Casualty Company opposes the motion. Doc. 56, att. 1.

### I.
### BACKGROUND

This suit arises from damage to condominiums owned by plaintiff in Lake Charles, Louisiana, during the 2020 hurricane season, a February 2021 winter storm, and two fires occurring in June and November 2021. The property consists of fifteen residential buildings, one recreational building, and an in-ground pool. Doc. 1, ¶ 5; *see* doc. 19, att. 6 (policy). At all relevant times it was insured under a policy issued by State Farm, with policy years running from May 25, 2020, to May 25, 2021, and from May 25, 2021, to May 25, 2022. Doc. 1, ¶¶ 6–7.

Plaintiff maintains that State Farm failed to timely or adequately compensate it for covered losses. It filed suit against State Farm in this court on August 26, 2022, invoking the court's diversity jurisdiction and raising state law claims for breach of insurance

contract and bad faith. Doc. 1. State Farm obtained summary judgment on plaintiff's claims arising from the fires, to the extent plaintiff was attempting to obtain double payment for areas damaged by the hurricane and not repaired since that time.[1] Doc. 34. Plaintiff now moves for summary judgment on its bad faith claim under Coverage A of the policy, arguing that State Farm had sufficient notice that the loss exceeded policy limits yet still failed to timely finish its adjustment of the claim or issue payment within the statutory time period. Doc. 48, att. 3. State Farm opposes the motion.[2] Doc. 56, att. 1.

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go

---

[1] By the time of the fires, State Farm had already paid out the policy limits on plaintiff's hurricane claim and plaintiff had begun some of the repair work. Accordingly, the court allowed "that plaintiff may establish through competent evidence at trial which outstanding damages relate to repairs that were in progress or completed and then impacted by the fires." Doc. 34, p. 5.

[2] State Farm also asserts that the parties "have significant and material discovery to complete before this motion could possibly be ripe for decision," pointing to the fact that it has not yet scheduled depositions of plaintiff's general contractor and estimator and that the State Farm adjusters and manager who appear in the claims notes as well as the outside engineering firm it retained have also not been deposed. Doc. 51; doc. 56. The court notes that this matter was previously set for trial on October 15, 2024, and continued after the court ruled on State Farm's motions for partial summary judgment in July 2024. *See* docs. 18, 36. The new trial date was set in October 2024, over one year ago. State Farm does not dispute that plaintiff paid over $12 million to its contractor for repairs, in excess of the policy limits as discussed below. *See* doc. 48, att. 2, p. 62. And plaintiff is under no obligation to depose all of State Farm's witnesses before filing its dispositive motions. Accordingly, the court finds no basis for delaying adjudication.

beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

### III.
### LAW & APPLICATION

Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity jurisdiction applies the substantive law of the forum state. *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991). Louisiana law provides that an insurance policy is a contract and that its provisions are construed using the general rules of contract interpretation in the Louisiana Civil Code. *Hanover Ins. Co. v. Superior Labor Svcs., Inc.*, 179 F.Supp.3d 656, 675 (E.D. La. 2016). The words of the policy are given their generally prevailing meaning and "interpreted in light of the other provisions so that each is given

the meaning suggested by the contract as a whole." *Coleman v. Sch. Bd. of Richland Par.*, 418 F.3d 511, 516–17 (5th Cir. 2005) (citing La. Civ. Code arts. 2047, 2050). Ambiguities in the policy must be construed against the insurer and in favor of coverage. *Id.* The court resolves an ambiguity by asking "how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered." *Id.*

Louisiana Revised Statute § 22:1892 makes an insurer liable for penalties and attorney fees in certain circumstances based on its bad faith handling of a claim. To prevail under this statute, the insured must show that (1) the insurer received satisfactory proof of loss; (2) the insurer failed to tender payment within 30 days of receiving this proof; and (3) the insurer's failure to pay is "arbitrary, capricious, or without probable cause." *Guillory v. Lee*, 16 So.3d 1104, 1126 (La. 2009). Similarly, Louisiana Revised Statute § 22:1973(B)(5) provides for an award of penalties when an insurer fails to pay within 60 days and that failure is "arbitrary, capricious, or without probable cause."

Under Louisiana law, "satisfactory proof of loss" means "only that which is sufficient to fully apprise the insurer of the insured's claims." *La. Bag Co., Inc. v. Audubon Indem. Co.*, 999 So.2d 1104, 1119 (La. 2008) (internal quotations omitted). "Louisiana decisions demonstrate that 'proof of loss' is a flexible requirement. An insurer of course must receive some kind of notice of a claim before it can act. So long as it receives enough information, the manner in which it obtains the information is immaterial." *Austin v. Parker,* 672 F.2d 508, 520 (5th Cir. 1982) (internal quotations omitted).

The policy provides blanket coverage for property damage at a limit of $10,385,400.00. Doc. 19, att. 6, p. 3. Plaintiff notified State Farm of its storm damage after

Hurricane Laura and the insurer sent field adjuster Sean Freeman, a State Farm employee, to inspect the property on August 31, 2020. Doc. 48, att. 1, pp. 27–28; doc. 48, att. 2, pp. 75–76. Freeman recorded:

> CS inspected risk property with PM and owner John present. CS inspected all 16 buildings. Many are heavily damaged from Cat 4 hurricane. All roofs have sustained heavy damage. Many buildings have brick veneer that was blown off by hurricane. CS discussed length of settlement with PH and he [understood] that complex claims require more time. CS working on estimate and will need multiple additiona[l] inspections.

Doc. 48, att. 1, p. 28. Nevertheless, State Farm "did not . . . offer advance payment" to plaintiff on the claim at that time. *Id.* On September 19, Freeman recorded that an engineer had been requested and that he had set a "25 day calendar for f/u regarding engineering status." *Id.* at 26. The following day, he recorded: "Most shingles blown off. Water entered risk through roof and damaged all rooms. Most ceilings have collapsed. Some units have completely collapsed. The engineer is to inspect the week of the 28th. He will reach out to me with questions." *Id.* Still, an advance was not offered until the plaintiff reached out via email on October 12, after the property suffered additional damage in Hurricane Delta, and requested one. *Id.* at 25.

Two days later, plaintiff's representative spoke with Jason Coon, a State Farm employee who took over as adjuster from Sean Freeman. *Id.* at 24. Coon recorded that plaintiff had already exceeded his $500,000.00 deductible in out-of-pocket costs for mitigation. *Id.* at 23–24. Yet State Farm only offered a $100,000.00 advance at first, amending to $300,000.00 after plaintiff indicated his field adjuster told him he could ask for that much and required it to stay current with the mitigation company. *Id.* The

$300,000.00 advance was approved the following day, October 15. *Id.* On that same date, Coon recorded "[p]otential damage between $4-7 million dollars not including [lost income]." *Id.* at 21.

On November 6, after receiving estimates on Buildings 7, 8, 14, and 15, Coon recorded that damages on all four buildings exceeded the policy limits by "roughly $1.3 million" and made a rough guess of "16+ million dollars for all 16 buildings," well in excess of the $10,385,400.00 policy limit even accounting for the $519,000 deductible. *Id.* The following day State Farm supervisor Rick Degnan requested an additional advance of $2,000,000.00, acknowledging that the "total amount of loss [is] anticipated to exceed $10,000,000.00." *Id.* at 16. He was only approved for $1,700,000.00. *Id.* at 14–16. The following day Coon received estimates for Buildings 9 and 12, which were "also way over the limit for each building." *Id.* at 15.

By January 2021, State Farm had received rough estimates on all buildings. *Id.* at 11. Coon worked to complete these estimates through January and February. *Id.* at 4–11. On March 10, 2021, he completed his reconciliation of the estimates under Coverage A and requested review. *Id.* at 4. As initially forecasted, the damages exceeded the coverage limits by well over $1 million. *Id.* at 30. State Farm returned the estimate to Coon for revisions on March 29 and Coon resubmitted on April 2, apparently, experiencing technical issues. *See* doc. 51, att. 2, p. 5. "Additional revision questions" were then sent to Coon on April 7 and he responded the same day. *Id.* State Farm also contends that it experienced technical delays with its Xactimate software from April 8 to April 19, during which time it could not upload files and produce the necessary reports. *Id.*; *see* doc. 48, att. 2, p. 155.

State Farm tendered payment of $8,395,400.00, representing the remaining policy limits after discounting the $2 million advance, on April 28, 2021. Doc. 48, att. 1, p. 3. During the course of this litigation, State Farm admitted that it had based this payment on an incorrect policy limit, resulting in an underpayment of $145,395.00. Doc. 48, att. 2, pp. 35–36. It tendered this amount to plaintiff in September 2025, on the same date as its 30(b)(6) deposition. *Id.*

State Farm agreed that it was required to unconditionally tender any undisputed amounts owed within 30 days of receiving satisfactory proof of loss. Doc. 48, att. 2, pp. 27–28. It also agreed that it knew damages were well in excess of $300,000.00 when it made the advance. *Id.* at 111–12. Finally, State Farm admitted that it failed to pay $10,000.00 owed under the policy for debris removal and has still not paid that amount. *Id.* at 59–60. The claims notes reveal that State Farm had sufficient notice that the loss exceeded the policy limits as early as November 2020, and certainly by January 2021 when it had received rough estimates confirming its forecast. State Farm now contends that it lacked sufficient information to fully apprise itself of the claim. It also provides a recent affidavit from Mr. Coon, who describes his review process with respect to the estimates and emphasizes that the amounts he recorded in his claim notes were mere guesswork while he awaited more detailed inspections and reports. Doc. 56, att. 3. But the estimates were accompanied by photos taken by Mr. Freeman in September 2020 and uploaded in January 2021. *See* doc. 48, att. 1, pp. 34–47. The buildings shown therein are catastrophically damaged, and the complex resembles a war zone. State Farm cannot hide behind the "large loss" categorization of the claim to lowball advances and string along the insured with a

delayed adjustment procedure when its own claims notes reflect that it was aware (1) from its first inspection that damages amounted to at least several million dollars and (2) from the first receipt of estimates in November 2020, and at the very least by completion of rough estimates in January 2021, that the damages under Coverage A exceeded the policy limits. *Cf. La. Bag Co.*, 999 So.2d at 1121 (insurer's failure to offer a larger advance payment, in the face of reasonable notice that the claim exceeded the policy limits, was arbitrary and capricious). Plaintiff is therefore entitled to penalties under § 22:1892 for all payments made under Coverage A, from the first advance paid on October 15, 2020, to the debris removal payment still being withheld. As plaintiff shows and State Farm fails to refute, this amount (50 percent of the (1) $300,000.00 advance, (2) $1,700,000.00 advance, (3) $8,395,400.00 payment, (4) $145,395.00 payment, and (5) $10,000.00 owed in debris removal) comes to $5,275,397.50. Under the statute, plaintiff is also entitled to costs and attorney fees but the court will defer determination of this amount until after the trial on plaintiff's remaining claims.

## IV.
### CONCLUSION

For the reasons stated above, the Motion for Partial Summary Judgment [doc. 48] will be **GRANTED** and judgment as a matter of law will be entered for plaintiff on its bad faith claims under Coverage A of the policy. Plaintiff is therefore entitled to $5,275,397.50 in penalties. The court will set a briefing schedule to address the costs and attorney fees owed after conclusion of the trial.

**THUS DONE AND SIGNED** in Chambers on the 10th day of November, 2025.

*[signature]*

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**